# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| VINCENT VICTOR ROGGIO and CALLIE LASCH ROGGIO, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | |
| CITY OF GARDNER, WILLIAM J. GRASMUCK, EDWARD BASENER, HANNAFORD BROTHERS COMPANY, and JOHN DOES ONE through FIVE (representing unknown parties and entities), | ) ) ) ) ) ) ) ) | Civil Action No. 10-40076-FDS |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER ON HANNAFORD BROS., CO.'S MOTION TO DISMISS; CITY OF GARDNER AND WILLIAM J. GRASMUCK'S MOTION TO DISMISS AS TO CALLIE LASCH ROGGIO; AND CITY OF GARDNER'S MOTION FOR JUDGMENT ON THE PLEADINGS

**SAYLOR, J.**

This is a civil action involving alleged privacy rights violations. Plaintiffs Victor and Callie Roggio allege that defendants improperly conspired to access and disseminate Mr. Roggio's criminal record from a federal computer database. The named defendants are the City of Gardner, Massachusetts; William J. Grasmuck; Edward Basener; and Hannaford Brothers Company. Plaintiffs have asserted claims under (1) 42 U.S.C. § 1983; (2) the federal Privacy Act, 5 U.S.C. § 552a; (3) the Massachusetts Privacy Act, Mass. Gen. Laws ch. 214, § 1B; and (4) the Massachusetts Criminal Offender Record Information statute, Mass. Gen. Laws ch. 6, § 172.

Pending before the Court are (1) a motion to dismiss filed by Hannaford as to all claims; (2) a motion to dismiss filed by Grasmuck and the City of Gardner as to the claims brought by Callie Roggio; and (3) a motion for judgment on the pleadings filed by the City as to all claims. For the reasons stated below, the motions will be granted in part and denied in part.

## I. Background

For the purpose of deciding the motions, the Court accepts as true all well-pleaded facts in the complaint.

Plaintiffs Victor and Callie Roggio are business owners and residents of Rumson, New Jersey. (Compl. ¶¶ 4, 5). In 1987, Mr. Roggio was convicted on several counts of mail fraud and making false statements in the United States District Court for the Southern District of Florida. (*Id.* ¶ 10). He served seven years in prison for these crimes. (*Id.* ¶¶ 10, 11).

After his release from prison in 1994, he and Mrs. Roggio established construction, real estate, manufacturing, and interior remodeling businesses in New Jersey. (*Id.* ¶ 11). Mrs. Roggio was also an independent video producer. (*Id.*). The Roggios' business contacts and relationships apparently were not aware of Mr. Roggio's criminal record. (*Id.* ¶¶ 13, 16).

Defendant Hannaford Brothers Co. is a corporation headquartered in Maine that operates supermarkets in several states, including Massachusetts. (*Id.* ¶ 8). Defendant Edward Basener, a resident of Massachusetts, was employed by the Hannaford supermarket in Gardner, Massachusetts, as a security officer. (*Id.* ¶ 9). He was also employed as a court officer in the Gardner District Court. (*Id.* ¶ 25(i)).

Plaintiffs allege that sometime in January 2006, an unknown representative or employee of Hannaford called Basener while he was working at the Gardner District Court. (*Id.*). According

to the complaint, this unknown person asked Basener to access a criminal records database and obtain a copy of Mr. Roggio's criminal record. (*Id.*). Plaintiffs allege that on the morning of January 11, 2006, Basener called defendant William Grasmuck, who was employed by the City of Gardner Police Department as a detective. (*Id.* ¶¶ 7, 25(i)). Basener allegedly told Grasmuck, falsely, that Mr. Roggio was at the Hannaford supermarket in Gardner and was suspected of shoplifting. (*Id.* ¶ 25(ii)). He then requested a copy of Mr. Roggio's criminal record. (*Id.*). A few minutes later, Grasmuck allegedly went to the Gardner police dispatcher and asked her to download a copy of Mr. Roggio's criminal record. (*Id.* ¶ 25(iii)). She complied and gave the criminal record to Grasmuck. (*Id.* ¶¶ 25(iv)).

Around this time, Mr. Roggio was involved in an acrimonious relationship with a former business partner, Zachary Emmanouil, who was contemplating filing a separate action against him. (*Id.* ¶ 25(v)). Plaintiffs allege that one of the co-defendants in this case sent Mr. Roggio's criminal record to Emmanouil, who forwarded it to his attorneys. (*Id.*). The remainder of the complaint alleges that defendants were engaged in a conspiracy with Emmanouil or his attorneys to publicize and distribute Mr. Roggio's criminal record. (*See id.* ¶¶ 25(vi)-(x)).

Beginning in March 2006, the criminal record appeared in the public filings in a separate case in the United States District Court for the District of New Jersey, as well as on the Internet. (*Id.* ¶ 25(vi)). It was also sent to banks with which the Roggios had a business relationship. (*Id.*).[1] Plaintiffs allege that on or about October 6, 2006, defendants or other co-conspirators

---

[1] The complaint states that his criminal record was sent to banks and filed in public legal papers in March 2007. (*See* Compl. ¶ 25(vi)). Given the timeline described in the remainder of the complaint, the Court assumes that this is a typographical error, and that plaintiffs intended to allege that the criminal record was disseminated in March 2006.

distributed the copy of Mr. Roggio's criminal record to his lender banks, business associates, his attorney, and his family. (*Id.* ¶ 25(vii)). On October 9, the same parties allegedly created a website that posted his criminal history; the information on the website was apparently obtained from the criminal record printout. (*Id.* ¶ 25(viii)). It was also printed from the website and given to more of plaintiff's lender banks, business associates, landlords, vendors, and customers. (*Id.* ¶ 25(x)).

Mr. Roggio found out about the website in November 2006. (*Id.*). Plaintiffs allege that they did not know how Mr. Roggio's criminal record was obtained until October 16, 2009. (*Id.* ¶ 27). At that time, they were involved in separate lawsuit with the Federal Bureau of Investigation ("FBI") arising out of these facts, and learned through discovery that Mr. Roggio's criminal record had been requested and obtained by the defendants in this matter. (*Id.*). According to the complaint, federal records revealed that Mr. Roggio's criminal record was downloaded once before the website was posted in October 2006; that download came at the request of the Gardner Police Department. (*Id.* ¶ 25(viii)).

Plaintiffs allege that as a result of the dissemination of Mr. Roggio's criminal record, their lending banks called in their business loans, and one business is now in bankruptcy. (*Id.* ¶ 26). In addition, two of plaintiffs' properties are in foreclosure and Mr. Roggio's credit score has been negatively impacted. (*Id.*). The complaint also asserts that the copy of criminal record obtained by defendants contained inaccuracies and information that should have been expunged. (*Id.* ¶ 25(ix)).

Plaintiffs filed this action on April 23, 2010. The complaint alleges four counts against all defendants: (1) a claim under 42 U.S.C. § 1983 for an alleged conspiracy to violate plaintiffs' due

4

process and privacy rights; (2) a claim under the federal Privacy Act, 5 U.S.C. § 552a; (3) a claim under the Massachusetts Privacy Act, Mass. Gen. Laws ch. 214, § 1B; and (4) a claim under the Massachusetts Criminal Offender Record Information ("CORI") statute, Mass. Gen. Laws ch. 6, § 172. They seek compensatory and punitive damages and attorney's fees.

Hannaford has filed a motion to dismiss as to all claims. The City of Gardner and Grasmuck have filed a motion to dismiss as to all claims brought by Mrs. Roggio. The City subsequently filed a motion for judgment on the pleadings as to all claims.

## II. Standard of Review

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted). "The standard for evaluating a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is essentially the same as that for deciding a Rule 12(b)(6) motion."

5

*Mongeau v. City of Marlborough*, 462 F. Supp.2d 144, 148 (D. Mass. 2006) (citing *Pasdon v. City of Peabody*, 417 F.3d 225, 226 (1st Cir. 2005)).

**III.** **City of Gardner and Grasmuck's Motion to Dismiss as to Callie Roggio**

The City of Gardner and Grasmuck have jointly moved to dismiss all claims brought by Mrs. Roggio on the ground that she has no standing to pursue those claims. Attached to defendants' motion are exhibits indicating that Mrs. Roggio filed for Chapter 7 bankruptcy in the District of New Jersey on October 2, 2009. She did not list on her schedule of assets and liabilities in that proceeding any claims against the City or Grasmuck. (*See* Mot. to Dismiss as to Callie Roggio, Ex. A). She did, however, list a defamation claim against the FBI that was, at the time, pending in the United States District Court for the District of New Jersey. (*See* Needle Decl., Ex. 1). The filings indicate that Mrs. Roggio's Chapter 7 case was closed and the trustee was discharged on February 2, 2010. (*See* Pl.'s Opp. at 3).

Under 11 U.S.C. § 541(a)(1), all claims and causes of action of a debtor in bankruptcy that have accrued as of the filing of a bankruptcy case become property of the bankruptcy estate. *See In re Rare Coin Galleries of America, Inc.*, 862 F.2d 896, 900-01 (1st Cir. 1988); *Welsh v. Quabbin Timber, Inc.*, 199 B.R. 224, 229 (D. Mass. 1996). A debtor seeking shelter under the bankruptcy laws is obligated to disclose all assets to the bankruptcy court, including contingent claims. 11 U.S.C. § 521(a)(1). Once listed on the schedule of assets, the trustee is responsible for asserting or maintaining the listed claims. *Rare Coin Galleries*, 862 F.2d at 901.

If the trustee chooses not to pursue properly-scheduled claims before discharge, the claims may be deemed abandoned and revert to the debtor. *See* 11 U.S.C. § 554(c). However, in order for property to be legally abandoned by operation of § 554(c), the debtor must "formally schedule

6

the property" pursuant to § 521(a)(1). *Jeffrey v. Desmond*, 70 F.3d 183, 186 (1st Cir. 1995). Moreover, "the law is abundantly clear that the burden is on the debtor[] to list the assets and/or amend the[] schedules." *Id.* If a claim is not properly scheduled prior to the close of the bankruptcy case, it "remains the property of the bankrupt estate, and the debtor loses all rights to enforce it in [her] own name." *Id.* at 186 n.3 (citing *Vreugdenhill v. Navistar Int'l Transp. Corp.*, 950 F.2d 524, 526 (8th Cir. 1991)); *see also* 11 U.S.C. § 554(d).

The City and Grasmuck contend that because Mrs. Roggio did not list the claims she has filed against them on her schedule of assets, they remain the property of the bankruptcy estate, and she has no standing to pursue them. Alternatively, they contend that the doctrine of judicial estoppel should be invoked to bar the claims.

Mrs. Roggio maintains that she made a proper disclosure of the claims on her schedule of assets. She notes that she listed a defamation claim against the FBI, and contends that this item is in fact the same claim as four privacy claims that she has asserted in this matter. Mrs. Roggio contends that the privacy claims arose out of the same transaction as the defamation claim, but, at the commencement of her bankruptcy case, she was not aware of the underlying facts surrounding the alleged privacy breach or of the identities of the defendants in this action. She admits, however, that she did not amend her schedule of assets when she learned these relevant facts on October 16, 2009, fourteen days after filing her bankruptcy case but while the case remained pending.

"The duty to disclose [under § 521] is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend [her] financial statements if circumstances change." *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1286 (11th Cir. 2002);

7

*see also Ajaka v. BrooksAmerica Mortg. Corp.*, 453 F.3d 1339, 1344 (11th Cir. 2006); *Jeffrey*, 70 F.3d at 186. It is undisputed that Mrs. Roggio learned of the underlying facts in this matter and the defendants' identities two weeks after she filed her case in the Bankruptcy Court. The fact that she learned the existence of those potential claims after the filing surely constitutes changed circumstances. It is also undisputed that Mrs. Roggio did not list these causes of action on the schedule of assets during the pendency of the bankruptcy proceeding. Furthermore, she has offered no explanation justifying her failure to amend her schedule of assets after she discovered the underlying facts.

Because the claims in this case were never scheduled, either in the initial schedule of assets or through subsequent amendment, the Bankruptcy Court did not receive notice of the claims, and therefore could not have evaluated their likelihood of success or estimated their value. Throughout the proceeding, it was "left with the false impression that there was a single claim," when in fact Mrs. Roggio was well aware of the possibility of filing four new claims against four new defendants. *Graupner v. Town of Brookfield*, 450 F. Supp. 2d 119, 126 (D. Mass. 2006). As Mrs. Roggio failed to properly schedule the claims she has pursued in this matter, the claims were not abandoned through operation of § 554(c) when the bankruptcy case was closed in February 2010. *Jeffrey*, 70 F.3d at 186 & n.3; *In re Rothwell*, 159 B.R. 374, 377 (D. Mass. 1993). The claims do not belong to her, but rather, pursuant to 11 U.S.C. § 554(d), they remain the property of the estate. *See Jeffrey*, 70 F.3d at 186; *Graupner*, 450 F. Supp. 2d at 125; *In re Capozzi*, 229 B.R. 250, 251-52 (Bankr. S.D. Fla. 1999).

Mrs. Roggio thus does not have standing to assert her claims, and the City and Grasmuck accordingly request that this Court dismiss those claims. To the extent, however, that any of the

claims have merit, dismissal would be potentially unfair to her creditors, who are entitled to apply any proceeds of the claims toward satisfying her debts. The Bankruptcy Court should have an opportunity to determine whether the estate has any interest in those claims. The claims of Mrs. Roggio in this matter will accordingly be stayed for a reasonable period of time so that the Bankruptcy Court can determine whether to reopen the case, and, if so, whether to appoint (or reappoint) a trustee, who may pursue the claims on behalf of the estate.[2]

Because Mr. Roggio did not file for bankruptcy, the Court will consider the merits of the remaining motions as to his claims.

## IV. Hannaford's Motion to Dismiss

Plaintiff's theory of the case is that the defendants conspired to access his criminal record unlawfully and to disseminate it in violation of his constitutional and statutory rights to privacy. In order for Hannaford to be found liable, plaintiff must establish that a conspiracy existed and that Hannaford can be held responsible, under the doctrine of *respondeat superior*, for the acts of its employees or agents in furtherance of that conspiracy.

Hannaford attacks the sufficiency of the factual allegations in the complaint supporting both of these requirements. First, it contends that the pleadings are insufficient to allege a plausible conspiracy to invade plaintiff's privacy rights. Second, it contends that even assuming a

---

[2] The City and Grasmuck also contend that the equitable doctrine of judicial estoppel should bar all of Mrs. Roggio's claims. Generally, the doctrine "precludes a party from asserting a position in one legal proceeding which is contrary to a position it has already asserted in another." *Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 212 (1st Cir. 1987). In the bankruptcy context, courts have held that the doctrine bars claims brought by debtors who had been discharged of their debts through bankruptcy proceedings but had failed to list the claims on their schedule of assets. *See, e.g.*, *Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 571 (1st Cir. 1993); *Howell v. Town of Leyden*, 335 F. Supp. 2d 248, 250-52 (D. Mass. 2004); *Welsh*, 199 B.R. at 229. Because the Court has determined that the more prudent path in this case is to permit the Bankruptcy Court to consider Mrs. Roggio's claims, it will not consider the merits of the judicial estoppel argument at this time.

9

conspiracy, the pleadings are insufficient to suggest that any of the participants in the conspiracy were agents or employees of Hannaford acting within the scope of their employment. As its second contention resolves the matter, the Court will address that argument first.

Under the doctrine of *respondeat superior*, an employer is subject to liability for the torts of its employees committed within the scope of their employment. *Lev v. Beverly Enters.-Mass., Inc.*, 457 Mass. 234, 238 (2010); *Mosko v. Raytheon Co.*, 416 Mass. 395, 399 (1993); RESTATEMENT (THIRD) OF AGENCY § 2.04 (2006). The conduct of any employee is "within the scope of employment if it is of the kind that he is employed to perform, . . . if it occurs substantially within the authorized time and space limits, . . . and if it is motivated, at least in part, by a purpose to serve the employer." *Lev*, 457 Mass. at 238 (quoting *Mosko*, 416 Mass. at 399 (citations omitted); *see also* RESTATEMENT (THIRD) OF AGENCY § 7.07 (2006).

The Supreme Court has stated that on a motion to dismiss, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949. Courts "are not bound to accept as true a legal conclusion couched as a factual conclusion." *Id.* at 1950 (quoting *Twombly*, 550 U.S. at 555). A complaint that simply contains conclusory recitations of causes of action or legal principles, but is unsupported by factual allegations, will not survive a motion to dismiss. *See id.* To that end, it is necessary to identify which allegations in the complaint concerning the relationship between Hannaford and its alleged agents are entitled to an assumption of truth. *See id.*

Only two paragraphs in the complaint relate to Hannaford. (*See* Compl. ¶¶ 25(i), (ii)). The first paragraph reads:

> In or around January, 2006, a representative of defendant Hannaford, acting in the course and scope of his authority as an officer, agent or employee of Hannaford and at the request of and in concert with someone whose identity is not yet known, telephoned defendant Edward Basener, then both court officer in the Gardner District Court and a security officer at the Hannaford supermarket in Gardner, while Basener was at the Gardner District Courthouse, and requested him to cause and request the rap sheet of Vincent Roggio to be pulled from the federal computer system in which it was stored[.]

(Compl. ¶ 25(i)). The second paragraph asserts that Basener made a telephone call to Grasmuck, allegedly "while acting both in his capacity as a Gardner District Court Officer and a Hannaford Supermarket security officer." (Compl. ¶ 25(ii)). It was in this call that Basener allegedly stated that Mr. Roggio was at the Hannaford in Gardner and suspected of shoplifting. (*Id.*).

That is the entirety of the allegations concerning Hannaford and its relationship with Basener and the unknown representative. To the extent that the pleadings assert that the unknown representative and Basener were acting in the scope of their authority or in their capacity as agents of Hannaford, the statements are legal conclusions. Conclusory statements that a person was acting as an agent or within the scope of employment are not entitled to any assumption of truth. *See Iqbal*, 129 S. Ct. at 1951 ("[B]are assertions [that] . . . amount to nothing more than a 'formulaic recitation of the elements' of a . . . claim . . . are conclusory and not entitled to be assumed true." (quoting *Twombly*, 550 U.S. at 555)). An assertion that a co-defendant was acting within the scope of an agency relationship must be supported by factual allegations.

There are no factual allegations that plausibly suggest that Basener or the unknown representative were acting within the scope of their employment at Hannaford when they made the alleged telephone calls. The complaint does not allege that either of the calls were made while

11

the caller was physically working at Hannaford, and no other facts are alleged that would suggest the co-defendants were operating within the "authorized time and space limits." *Mosko*, 416 Mass. at 399 (citing *Vallavanti v. Armour & Co.*, 260 Mass. 417, 419-20 (1927)).[3] The complaint does not allege that requesting criminal records from the police department is a task expected of or commonly performed by Hannaford employees, and no other facts suggest that the co-defendants' calls were "of the kind [of work they are] employed to perform." *Id.* (citing *Douglas v. Holyoke Mach. Co.*, 233 Mass. 573, 576 (1919)). And the complaint does not allege facts suggesting that anyone at Hannaford assigned the co-defendants the task of making the calls or that the calls were otherwise subject to the direction or control of Hannaford.[4] Accordingly, there are no factual allegations from which the Court could infer that the co-defendants were "motivated, at least in part, by a purpose to serve the employer." *Id.* (citing *Donahue v. Vorenberg*, 227 Mass. 1, 5 (1917)).

As there are no factual allegations that could suggest that Basener or the unknown representative were agents of Hannaford acting within the scope of their employment when they made the allegedly harmful telephone calls, Hannaford cannot be held vicariously liable for their actions. There is simply no plausible basis for establishing any of the elements of *respondeat superior*. Setting aside the matter of whether the complaint plausibly alleges a conspiracy, plaintiff has failed to sufficiently meet the pleading requirements of the federal rules to suggest a

---

[3] Indeed, as to Basener, the complaint is most plausibly read to allege that he was working at his job at the Gardner District Court when the telephone calls were made. (Compl. ¶ 25(i)). At a minimum, the complaint alleges that Basener was at the court when he received the call from the unknown representative. Whether he telephoned Grasmuck immediately after he received that call is not clear.

[4] The complaint alleges that the unknown representative made the call "at the request of and in concert with someone whose identity is not yet known." (Compl. ¶ 25(i)). There is no allegation that the person requesting the alleged call was a supervisor at Hannaford or had any relationship whatsoever to Hannaford.

plausible basis for vicarious liability. For that reason alone, Hannaford's motion to dismiss must be granted as to all of Mr. Roggio's claims.[5]

## V.    City of Gardner's Motion for Judgment on the Pleadings

### A.    Section 1983 Claim

Plaintiff concedes in his opposition memorandum that he has failed to plead a § 1983 claim against the City because he did not allege that a policy or custom of the City caused his injuries. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 690-92 (1978). The City's motion for judgment on the pleadings as to Mr. Roggio's § 1983 claim will therefore be granted.

### B.    Federal Privacy Act Claim

The City contends that plaintiff cannot state a claim under the federal Privacy Act, 5 U.S.C. § 552a, because the statute only provides a cause of action against federal agencies. The City is correct; the private right of action contained in the statute is specifically limited to civil suits against agencies of the United States government. *See* 5 U.S.C. § 552a(g); *Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006); *Burns v. Potter*, 334 F. Supp. 2d 13, 21 (D. Mass. 2004). The statute does not provide a right of action against private individuals, private entities, or municipalities. *See, e.g.*, *Dittman v. California*, 191 F.3d 1020, 1026 (9th Cir.

---

[5] The Court also notes that plaintiff's § 1983 claim against Hannaford is vulnerable on other grounds. Most obviously, the factual basis for meeting the "state action" requirement of § 1983 is dubious. In addition, most circuit courts have held that, just as municipalities cannot be vicariously liable for the actions of their employees, *see Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), private corporations also are not subject to liability on a *respondeat superior* theory for the constitutional torts of their employees. *See, e.g.*, *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408-09 (2d Cir. 1990); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *Iskander v. Village of Forest Park*, 690 F.2d 126, 128-29 (7th Cir. 1982); *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir. 1993); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Harvey v. Harvey*, 949 F.2d 1127, 1129-30 (11th Cir. 1992). The Court, however, does not reach those issues here.

1999). As the City is not a federal agency, its motion to for judgment on the pleadings will be granted as to Mr. Roggio's federal Privacy Act claim.

### C. Massachusetts Privacy Act Claim

The Massachusetts Privacy Act establishes "a right against unreasonable, substantial or serious interference with . . . privacy." Mass. Gen. Laws ch. 214, § 1B. The statute protects individuals from "disclosure of facts . . . that are of a highly personal or intimate nature when there exists no legitimate, countervailing interest." *Dasey v. Anderson*, 304 F.3d 148, 153-54 (1st Cir. 2002) (quoting *Bratt v. International Bus. Mechs. Corp.*, 392 Mass. 508, 518 (1984) (citations omitted)). Generally, the statute is concerned with the dissemination of information that is actually private. *See Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 409 Mass. 514, 517 n.4 (1991); *Cefalu v. Globe Newspaper Co.*, 8 Mass. App. Ct. 71, 77-78 (1979). Courts therefore recognize that the right does not extend to matters that are a part of the public domain or to matters of public concern. *See, e.g.*, *Taylor v. Swartwout*, 445 F. Supp. 2d 98, 103 (D. Mass. 2006) ("[T]here can be no invasion of privacy where the facts, though highly personal, are already in the public domain."); *Boston Herald, Inc. v. Sharpe*, 432 Mass. 593, 612 (2000) ("When the subject matter of the publicity is of public concern, . . . there is no invasion of privacy.").

The City contends that because Mr. Roggio's criminal record and the fact of his conviction have been a part of the public domain since 1987, the Massachusetts Privacy Act affords him no protection against the dissemination of that information. Plaintiff has admitted in the complaint that his criminal record was publicly accessible. (Compl. ¶ 15). And, as he was convicted following a trial by jury, his trial proceedings presumably occurred in open court. *See*

14

U.S. CONST. amend. VI (guaranteeing criminal defendants the right to a public trial). The Supreme Judicial Court has recently reaffirmed the public nature of criminal records, observing that "records of conviction are public records that are constitutionally required to be public." *Roe v. Attorney General*, 434 Mass. 418, 435 (2001); *see also Eagle v. Morgan*, 88 F.3d 620, 626 (8th Cir. 1996) (explaining that criminal defendants should have "virtually no expectation of privacy" in events or facts arising out of a criminal conviction).

The Court agrees that plaintiff can have no reasonable expectation of privacy in his criminal record because it is already a part of the public domain. *See Philbrook v. Perrigo*, 637 F. Supp. 2d 48, 55 (D. Mass. 2009) (granting summary judgment on a claim under the Massachusetts Privacy Act, because "the fact of [plaintiff's] arrest is part of her criminal offender record, [so] she should not have had an expectation of privacy"). Accordingly, the City is entitled to judgment on the pleadings for Mr. Roggio's Massachusetts Privacy Act claim.

### D. Violation of Criminal Offender Record of Information Statute Claim

The Massachusetts Criminal Offender Record Information statute, Mass. Gen. Laws ch. 6, § 172, restricts public access to criminal records under some circumstances. The statute provides that criminal offender record information shall be disseminated only to "(a) criminal justice agencies; (b) such other agencies and individuals required to have access to such information by statute . . . and (c) any other agencies and individuals where it has been determined that the public interest in disseminating such information to these parties clearly outweighs the interest in security and privacy." Plaintiff alleges that one or more of the co-defendants infringed the CORI statute when they accessed his criminal record and when they disseminated it to Emmanouil. (*See* Compl. ¶¶ 35, 36).

15

The City makes two principal arguments in its motion for judgment on the pleadings. First, analogizing to the *Monell* jurisprudence in the § 1983 context, it contends that a municipality cannot be vicariously liable for the CORI violations of its employees absent an allegation that a policy or custom of the municipality led to the CORI violation. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 690-92 (1978). In support of its argument, the City cites to a footnote in a federal court decision that speculates that a municipal co-defendant in a CORI claim was "presumably named on a theory of municipal liability patterned after *Monell*." *Galvin v. Town of Yarmouth*, 470 F. Supp. 2d 10, 11 n.1 (D. Mass. 2007). The Court is aware of no other case law—and, notably, no case law from Massachusetts courts—holding that a municipality may not be vicariously liable for the CORI violations of its employees. Although the analogy to *Monell* has some appeal, nothing in the CORI statute suggests that the principles of *Monell* are necessarily transferable. The Court is not prepared, at least at this stage in the proceedings, to hold that there is no possibility of recovery against a municipality on such a theory.

The City's second argument is that even if it is subject to liability under the CORI statute for Grasmuck's actions, Grasmuck believed that he was disseminating Mr. Roggio's criminal record in response to a criminal shoplifting investigation. (Compl. ¶ 25(ii)). If this is so, as the City maintains, dissemination of the record was proper under prong (c) of § 172 and 803 Code Mass. Regs. § 2.04(5)(a).[6] The City further contends that even if distributing the record was not

---

[6] The relevant regulation, 803 Code Mass. Regs. § 2.04(5)(a), provides that "[a] criminal justice agency with official responsibility for a pending criminal investigation or prosecution may disseminate CORI that is specifically related to and contemporaneous with an investigation or prosecution." The regulation was upheld in *Bellin v. Kelley*, 435 Mass. 261, 265-69 (2001).

16

proper, Grasmuck is entitled to qualified immunity. These arguments, however, misapprehend the thrust of plaintiff's complaint. Plaintiff alleges that Grasmuck participated in a conspiracy to send the criminal record to Emmanouil—surely not someone who would have been involved with any shoplifting investigation at Hannaford. (Compl. ¶ 25(v)). If these allegations are true, then the dissemination of plaintiff's criminal record can hardly be viewed as furthering the public interest or responding to a pending criminal investigation. Officer Grasmuck's actions therefore would not be authorized by the CORI statute or 803 Code Mass. Regs. § 2.04(5)(a).

Accordingly, the City is not entitled to judgment on the pleadings for Mr. Roggio's CORI claim.

## VI. Conclusion

For the foregoing reasons,

1. The motion to dismiss of defendant Hannaford Brothers Company is GRANTED as to claims asserted by Victor Roggio, and DENIED without prejudice to its renewal as to claims asserted by Callie Roggio;

2. The motion to dismiss of defendants City of Gardner and William Grasmuck as to claims asserted by Callie Roggio is DENIED without prejudice to its renewal;

3. The motion for judgment on the pleadings of defendant City of Gardner is GRANTED as to Victor Roggio's claims under 42 U.S.C. § 1983; the federal Privacy Act, 5 U.S.C. § 552a; and the Massachusetts Privacy Act, Mass. Gen. Laws ch. 214, § 1B; DENIED as to Victor Roggio's claim under the Massachusetts Criminal Offender Record Information statute, Mass. Gen. Laws

ch. 6, § 172; and DENIED without prejudice to its renewal as to claims asserted by Callie Roggio;

4. This proceeding is stayed for 60 days as to all claims filed by Callie Roggio;

5. The Clerk of the Court is directed to provide a copy of this Memorandum and Order to the United States Bankruptcy Court for the District of New Jersey; and

6. The claims of plaintiff Callie Roggio shall be dismissed 60 days after the date of this Memorandum and Order for lack of standing unless plaintiff Callie Roggio files appropriate pleadings with this Court demonstrating that she has authority from the Bankruptcy Court to pursue such claims, or unless a bankruptcy trustee, or other authorized representative of her bankruptcy estate, files appropriate pleadings requesting other relief.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
Dated: March 30, 2011   United States District Judge