## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| VINCENT VICTOR ROGGIO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| CITY OF GARDNER, WILLIAM J. ) | Civil Action No. |
| GRASMUCK, and ) | 10-40076-FDS |
| EDWARD BASENER, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

### MEMORANDUM AND ORDER ON
### DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

**SAYLOR, J.**

This is a civil action involving allegations that defendants illegally obtained access to, and disseminated, plaintiff's criminal record. Plaintiff Vincent Roggio alleges that defendants improperly conspired to access and disseminate his criminal record from a federal computer database, in violation of the Massachusetts Criminal Offender Record Information ("CORI") statute, Mass. Gen. Laws ch. 6, § 172. The named defendants are the City of Gardner, Massachusetts, and two individuals, William J. Grasmuck and Edward Basener.

Defendants have each moved for summary judgment. Defendant Grasmuck has also filed a motion to strike certain assertions set forth in the plaintiff's statement of material facts and oppositions to defendants' motions for summary judgment. For the reasons stated below, the City of Gardner's motion for summary judgment will be granted, and the remaining motions will be denied.

I.      **Background**

   A.      **Factual Background**

   Unless otherwise specified, the following facts are undisputed.

   Plaintiff Vincent Roggio is a business owner and resident of Rumson, New Jersey.  In 1987, Roggio was convicted in the United States District Court for the Southern District of Florida of several counts of mail fraud and making false statements.  (Grasmuck SMF ¶ 1).  He served seven years in federal prison for those crimes.  (Grasmuck SMF ¶ 2).  His conviction and prison sentence are matters of public record.  (Grasmuck SMF ¶ 3).

   After his release from prison in 1994, Roggio relocated to New Jersey where, along with his wife, he established a number of business ventures.  (Compl. ¶ 11).  In particular, beginning in 2004, he was involved in a construction company named Gibraltar Granite & Marble Corp.  (Grasmuck SMF ¶ 9).[1]

   On March 7, 2006, Roggio's former attorney, Zachary Emmanouil, filed a complaint against him in the United States District Court for the District of New Jersey.  (Grasmuck SMF ¶ 11).  That complaint included information detailing Roggio's criminal history.  (Grasmuck SMF ¶ 13; Gardner SMF Ex. O).[2]  The same content was then published on a website, "Gibraltar-Granite.com," in October of the same year.[3]

_____

   [1] After having lost money in each year of its existence, Gibraltar Granite filed a voluntary petition for bankruptcy in early 2008.  (Grasmuck SMF ¶¶ 9, 17, 50).

   [2] On May 30, 2006, the District Court in New Jersey sealed the portion of the complaint in that court that referred to Roggio's criminal record.  (Pl. Opp. to Gardner's MSJ at 9).

   [3] The website was taken down in 2008 for failure to pay fees.  (Grasmuck SMF ¶ 15).

According to the Section Chief in charge of FBI Criminal Justice Information Services, the information about Roggio's criminal history that was included in the 2006 complaint could only have come from a "QR" query of the federal Interstate Identification Index ("III") database. The format of the information indicates that the "QR" at issue must have been printed between the years 2004 and 2006.  (Gardner SMF ¶ 48).[4]  According to FBI records, two "QR" inquiries occurred during that time:  one that was initiated by a Florida office of U.S. Customs Service Inspection and Control on August 6, 2004, and one that was initiated by the Gardner Police Department on January 11, 2006.  (Gardner SMF ¶ 49).

Roggio has brought this suit based on the "QR" inquiry conducted by the Gardner Police Department.  The parties dispute the events of that day, as well as the motivations behind those events.

It is uncontested that a "QR" inquiry into Roggio was conducted at 7:47 a.m. on January 11, 2006.  (Gardner SMF ¶ 17).  The inquiry was conducted by Heather Newton, a dispatcher for the Gardner Police Department.  (Gardner SMF ¶¶ 7, 17).  According to the dispatch log, Newton conducted the inquiry at the request of Det. William Grasmuck, who indicated to her that Roggio was a "suspect in shoplifting in Hannaford's [Supermarket]."  (Gardner SMF ¶ 17).

An audio recording of the dispatch telephone line that morning includes a telephone call between Grasmuck and Edward Basener.  (Gardner SMF ¶ 27).  At the time, Basener worked as both a court officer at the Gardner District Court and an employee at Hannaford's Supermarket.  (Gardner SMF ¶ 31).  The call occurred just before the inquiry was made; it was placed from a

---

[4] There are several types of inquiries that can be conducted in the III database.  There is no dispute that the inquiry at issue here was a "QR" inquiry.

telephone at the Gardner Police Department to a telephone at the Gardner District Court,

suggesting that Basener was present at the court at the time.  (Gardner SMF ¶ 29).  The

conversation went as follows:

| | | |
|---|---|---|
| [Basener]: | Hello. | |
| [Grasmuck]: | Hello. | |
| [Basener]: | Who's this? | |
| [Grasmuck]: | Who's this? | |
| [Basener]: | Hello. | |
| [Grasmuck]: | You just paged me. | |
| [Basener]: | Who? | |
| [Grasmuck]: | You did. | |
| [Basener]: | I don't even know your pager, Nitwit. | |
| [Grasmuck]: | oh yeah, okay. | |
| [Basener]: | Hey, can you do N-C-C-I for me without printing it?  Write everything down? | |
| [Grasmuck]: | Ah – | |
| [Basener]: | An out-of-stater. | |
| [Grasmuck]: | Hold on, let me check in[5] – hold on I want to put you to another phone.  Hey, what's the private phone? | |

(Gardner SMF ¶ 30).  Grasmuck and Basener have both indicated that they have no memory of

the inquiry or the telephone conversation.  (Gardner SMF ¶¶ 23, 32).

Roggio has not been able to identify any direct connection between Zachary Emmanouil

and any Gardner employee.  (Gardner SMF ¶ 52).  However, he points to a draft complaint that

Emmanouil e-mailed to his lawyer later in the day on January 11, 2006.  Roggio contends that

the draft complaint, which was prepared by Emmanouil, included information about his criminal

history, and that the close proximity in time between the Gardner inquiry and Emmanouil's e-

mail indicates a connection.  (Pl. Resp. to Gardner SMF ¶ 52).  Emmanouil himself has testified

---

[5] Grasmuck contends that this transcript omits a word, and should read "let me check in house."  The difference is immaterial for purposes of this motion.

that he obtained the information concerning Roggio's criminal records from a variety of

individuals and public records, not from anyone in Gardner.  (Grasmuck SMF ¶ 14).

Roggio alleges that the Gardner inquiry into his criminal record was the source of the

information disclosed in both the Emmanouil complaint and the Gibraltar-Granite.com website.

He alleges that the disclosure of this information has harmed his reputation and business

prospects, and has caused him to suffer emotional distress and incur substantial legal fees.  (Pl.

Opp. to Grasmuck's MSJ at 9).

### B. Procedural Background

Plaintiff, along with his wife, Callie Roggio, filed this action on April 23, 2010.  The

complaint alleged four counts against all defendants:  (1) a claim under 42 U.S.C. § 1983 for an

alleged conspiracy to violate plaintiffs' due process and privacy rights; (2) a claim under the

federal Privacy Act, 5 U.S.C. § 552a; (3) a claim under the Massachusetts Privacy Act, Mass.

Gen. Laws ch. 214, § 1B; and (4) a claim under the Massachusetts CORI statute, Mass. Gen.

Laws ch. 6, § 172.[6]  The complaint sought compensatory and punitive damages, as well as

attorney's fees.

## II. Standard of Review

The role of summary judgment is to "pierce the pleadings and to assess the proof in order

to see whether there is a genuine need for trial."  *Mesnick v. General Elec. Co.*, 950 F.2d 816,

822 (1st Cir. 1991) (internal quotations omitted).  Summary judgment is appropriate when the

---

[6] On March 30, 2011, the Court dismissed the claims against defendant Hannaford Brothers Company and granted defendant City of Gardner's motion for judgment on the pleadings as to claims under 42 U.S.C. § 1983, the Federal Privacy Act, and the Massachusetts Privacy Act.  On May 16, 2011, the Court dismissed the § 1983 claims, Massachusetts Privacy Law claims, and Federal Privacy Act claims as to all defendants.  On September 16, 2011, the Court dismissed the claims of Callie Roggio for lack of standing.

pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant . . . would permit a rational fact finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). In evaluating a summary judgment motion, the Court indulges all reasonable inferences in favor of the non-moving party. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id*. at 256-57.

## III.   Defendant's Motion to Strike

Defendant Grasmuck has filed a motion to strike a number of plaintiff's assertions and exhibits on the grounds that they are inaccurate, unsupported, or otherwise improper. In particular, Grasmuck's motion asks the Court to strike portions of plaintiff's memorandum in opposition to summary judgment, as well as portions of certain supporting declarations.

As a general matter, only facts that would be admissible at trial may be considered by the court on summary judgment. *See Garside v. Osco Drug, Inc.*, 895 F.2d 46, 49-51 (1st Cir. 1990). However, under Fed. R. Civ. P. 56(c)(4), affidavits—although not themselves admissible at trial—may be offered in support of, or opposition to, summary judgment if they set forth facts that would be admissible under the Federal Rules of Evidence. *Garside*, 895 F.2d at 49-51.

A motion to strike is the proper vehicle for challenging the admissibility of an affidavit or other evidentiary submission offered at summary judgment.  *See Casa Office Machs., Inc. V. Mita Copystar Am., Inc.*, 42 F.3d 668, 682 (1st Cir. 1994).  The moving party must specify the objectionable portions of the evidentiary submission and the specific grounds for the objection. *Id.*

Defendant Grasmuck seeks to strike all or part of the declarations of Vincent Roggio and Harold Goldman.  As to Vincent Roggio, defendant Grasmuck first asks the Court generally to strike "so much of the [d]eclaration as relies on hearsay or offers unsupported conclusions." Defendant does not specify any particular portions of the declaration, nor does he cite specific grounds for excluding those portions.  Without more, this request does not meet the requirements for a motion to strike, and will be denied.  Defendant also seeks to strike paragraph 18 of plaintiff's Exhibit C as contradicted by Roggio's own deposition testimony.  Defendant is correct that plaintiff has made somewhat conflicting characterizations of his business contacts who became aware of his criminal record, and the actions they took as a result.  Accordingly, paragraph 18 of plaintiff's Exhibit C will be struck.

As to Harold Goldman, defendant Grasmuck asks the Court to strike the entire declaration because it is "replete with hearsay, legal conclusions, and is not based upon personal knowledge."  Harold Goldman has served as Vincent Roggio's lawyer in a number of legal matters, and in that capacity has prepared or reviewed a large quantity of documents.  While Goldman's declaration would not itself be admissible at trial, and indeed contains some hearsay and some legal conclusions, it appears to be based in significant part on personal knowledge gained through research and investigations that Goldman has done in conjunction with this case.

7

Furthermore, it sets forth, at least in part, facts that would be admissible in other forms at trial. Because defendant's motion to strike does not make any effort to identify those portions of the that defendant alleges are objectionable, and defendant does not specify the particular basis for his objection to any individual paragraph, that motion will be denied as to Goldman's declaration.

Defendant Grasmuck also seeks to strike several portions of plaintiff's memorandum in opposition to summary judgment. Defendant contends that these portions are inaccurate or unsupported by the evidence. As a general matter, factual statements in briefs that are made without reference to evidence or with reference to evidence that is in some way mischaracterized need not be considered at all, or may be treated as mere argument. The Court need not strike these statements. The Court will simply disregard factual assertions in plaintiff's brief that are made without evidentiary support, and defendant's motion to strike will be denied as to plaintiff's opposition memorandum.

Accordingly, defendant's motion to strike will be granted in part and denied in part, as noted herein.

### IV.    City of Gardner's Motion for Summary Judgment

Defendant City of Gardner contends that summary judgment should be granted in its favor for four reasons:  (1) the Massachusetts Tort Claims Act ("MTCA"), Mass. Gen. Laws ch. 258, § 12, is the exclusive remedy against the City, and the City is immune from liability under its provisions; (2) plaintiff failed to make a presentment as required by the MTCA; (3) disseminating CORI records to a court officer is permissible under the law; and (4) there is no

evidence that the City disseminated CORI to third parties.[7]

### A.      Application of the Massachusetts Tort Claims Act

The City of Gardner contends that Mass. Gen. Laws ch. 6, §177, which permits parties to bring a civil action to recover damages for injury caused by a CORI violation, has been superseded by the MTCA.  Whether municipalities may properly be sued under the CORI statute, or whether such claims have been superseded by the MTCA, is an open question.  *See Bellin v. Kelley*, 48 Mass. App. Ct. 573, 582 n.14 (2000).

The Court need not reach the issue, however, because the City is protected by the doctrine of sovereign immunity.  Under the Eleventh Amendment, "states are immune . . . from private suit in the federal courts, absent their consent" for claims seeking money damages.  *Greenless v. Almond*, 277 F.3d 601, 606 (1st Cir. 2002).  This immunity extends to any entity that is an "arm of the state."  *Wojcik v. Massachusetts State Lottery Comm'n*, 300 F.3d 92, 99 (1st Cir. 2002).  Even when a state consents to be subject to private suit, it "can be impleaded only in the manner and to the extent expressed . . . [by] statute."  *General Elec. Co. v. Commonwealth*, 329 Mass. 661, 664 (1953).  It is well-established that "[a] State's constitutional interest in immunity encompasses not merely whether it may be sued, but *where* it may be sued."  *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984) (emphasis added).

Whether the analysis is conducted under the CORI statute or the MTCA, the state has not consented to suit in federal court.  The MTCA, enacted in 1978, operates as a limited waiver of Eleventh Amendment immunity.  It provides that "[c]laims against the commonwealth, except as

---

[7] Defendant Bacener has moved to join the City's motion for summary judgment to the extent relevant to the claims against him.

otherwise expressly provided . . . may be enforced in the superior court." Mass. Gen. Laws ch. 258, § 12. The Supreme Judicial Court has clearly stated that this language does not constitute a waiver of the Commonwealth's Eleventh Amendment immunity to suit in federal court. *Irwin v. Commissioner of Dept. of Youth Services*, 388 Mass. 810 (1983). Accordingly, if plaintiff's CORI claim is governed by the MTCA, the Court lacks subject-matter jurisdiction over the claims against the city.

Similarly, the CORI statute provides that "[a]ny aggrieved person may institute a civil action in superior court . . . ." Mass. Gen. Laws ch. 6, § 177. It is well-settled that a state's waiver of sovereign immunity in its own courts does not imply a waiver of its immunity in the federal courts. *Florida Dept. of Health and Rehabilitative Services v. Florida Nursing Home Ass'n*, 450 U.S. 147, 150 (1981). While such statutory language does not limit a federal court's ability to hear a cause of action against a private individual, the language of the statute indicates an intent by the legislature to limit the Commonwealth's waiver of sovereign immunity to state court. Thus, even if the CORI statute has not been superseded by the MTCA, the Commonwealth's Eleventh Amendment immunity to suit in federal court remains intact.

Accordingly, plaintiff's remaining claim against the City of Gardner will be dismissed for lack of subject-matter jurisdiction.

### B.      Dissemination of CORI to a Court Officer

The Court will also address the City of Gardner's contention that summary judgment is appropriate because disseminating CORI to a court officer is permissible, as this contention is relevant to the claim against defendant Basener as well.

Defendant is certainly correct that police detectives such as Grasmuck may have lawful access to an individual's criminal record; it also seems likely that court officers such as Basener would qualify under the CORI statute as employees of "criminal justice agencies," and thus criminal records may properly be disseminated to such officers under appropriate circumstances. However, the statute does not suggest that all qualified officials may access all records at all times for all purposes.  Rather, the statute and the case law interpreting it are clear that, in order to be authorized, access must be "necessary for the *actual performance of the criminal justice duties of criminal justice agencies.*"  *Roe v. Attorney Gen.*, 434 Mass. 418 (2001) (emphasis added); Mass. Gen. Laws ch. 6, § 172 ("The extent of such access shall be limited to that necessary for the actual performance of the criminal justice duties of criminal justice agencies . . . .").

If defendants were not engaged in the actual performance of criminal justice duties at the time Grasmuck obtained access to plaintiff's criminal records and disseminated them to Basener, their actions are not protected.  Put simply, they are not immunized from liability because, under other circumstances, such access might be authorized.  Taking the facts in the light most favorable to the plaintiff, there is a triable issue of fact as to whether defendants were truly investigating a suspect in a shoplifting, or were pursuing the criminal records for another purpose.  Accordingly, summary judgment on that basis will be denied.

**IV.**     **Individual Defendants' Motions for Summary Judgment**

Defendant Grasmuck has moved for summary judgment on a number of grounds. Defendant Basener has again joined that motion to the extent that it applies to the claims against him.

A.      **Causation of the Dissemination of Roggio's Records**

Defendant Grasmuck contends that he is entitled to summary judgment on the grounds

that plaintiff cannot show any causal connection between the access of his criminal record that

occurred in Gardner and the dissemination of his record in the New Jersey litigation.

Defendant is correct that plaintiff has not presented any direct evidence that the Gardner

inquiry was the source of the information disclosed in New Jersey.  Indeed, plaintiff concedes as

much.  However, direct evidence is not the only way a plaintiff may prove his case.

Circumstantial evidence alone may create questions of fact that are sufficient to survive

summary judgment.  *T-Peg, Inc. v. Vermont Timber Works, Inc.*, 459 F.3d 97, 111 (1st Cir.

2006).

It is uncontroverted that plaintiff's criminal record was released to the public in a court

filing in the District of New Jersey, and also on a website.  It is also uncontroverted that the FBI

has indicated that the information in the filing came from a "QR" query—a particular type of

information search within the Interstate Identification Index that occurred between the years

2004 and 2006.  (Gardner SMF ¶¶ 9, 48).  There are only two inquiries that took place during

that time period, and thus only two possible sources for the information in the filing.  (Gardner's

SMF ¶ 49).  One inquiry was made by the Customs Service in Florida on August 4, 2004, and

one inquiry was made by the Gardner police department on the morning of January 11, 2006.

(Gardner SMF ¶ 49).

Plaintiff has also put forth evidence concerning the circumstances of the Gardner inquiry

that could reasonably be characterized as suspicious.  Plaintiff's criminal records were accessed

after a telephone call from Basener to Grasmuck requesting that Grasmuck do a search for

12

information regarding an "out-of-stater's" criminal record, but that he not print it.  (Gardner

SMF ¶ 30).  That telephone call was quickly switched over from a public line, which was

recorded, to a private line, which was not.  (Gardner SMF ¶ 30).  While the inquiry was

ostensibly made in conjunction with an investigation of a shoplifting suspect at Hannaford's

supermarket, Basener was not at Hannaford's at the time, his supervisor denies requesting the

records, and no evidence has been presented to suggest that plaintiff has ever been to the

supermarket, let alone been accused of shoplifting there.  Later that very same day, Emmanouil

e-mailed a draft complaint to his lawyer that allegedly included the information contained in

plaintiff's criminal record.  (Pl. Resp. To Gardner SMF ¶ 50).

      Viewing this evidence in the light most favorable to plaintiff, a reasonable jury could

conclude that it is more likely than not that a Gardner employee disseminated plaintiff's criminal

record in violation of CORI.   Accordingly, defendant's motion for summary judgment on the

grounds that plaintiff cannot prove that defendants were responsible for the CORI violation at

issue will be denied.

      **B.**      **<u>Evidence That Grasmuck Disseminated Roggio's Records</u>**

      Defendant Grasmuck contends that plaintiff has not produced, and cannot produce, any

evidence that he disseminated plaintiff's records to anyone, and thus cannot prove that Grasmuck

violated CORI.

      As a threshold matter, plaintiff need not prove that Grasmuck disseminated plaintiff's

records to anyone in order to prove a violation of CORI.  Mass. Gen. L. ch. 6, § 177 provides

that an aggrieved person may sue for *any violation* of CORI.  While unauthorized dissemination

of criminal offender record information is unquestionably a violation of CORI, it is not the only

13

type of violation.  Unauthorized access to an individual's CORI records is also a violation of the statute.

Here, plaintiff has set forth sufficient evidence to create a triable issue of fact as to both unauthorized access and unauthorized dissemination.  While criminal justice personnel are authorized to obtain access to criminal offender record information, that access is only authorized during the actual performance of criminal justice duties.  Mass. Gen. Laws ch. 6, § 172(a)(1).  If the jury finds that the individual defendants were not engaged in the actual performance of criminal justice duties at the time, they may reasonably find that the access to plaintiff's records were unlawful.

In addition, and as discussed more fully above, there is a genuine issue of material fact as to whether the defendants disseminated plaintiff's records in violation of CORI.  Accordingly, there is sufficient evidence that defendants violated the CORI statute to survive summary judgment.

> C.        **Proof of Actual Damages**

The individual defendants have also moved for summary judgment on the ground that plaintiff cannot show that he has suffered any actual damages as a result of their conduct.  They suggest that there is no evidence that any individual or lender took adverse action against plaintiff as a result of the alleged dissemination of his criminal record, and that therefore he cannot recover.

Recovery under the CORI statute does not, however, require proof of actual damages. The statute provides that, if a plaintiff is able to prove a willful violation,

> the violator shall not be entitled to claim any privilege absolute or qualified, and he shall in addition to any liability for such actual damages as may be shown, be

liable for exemplary damages of not less than one hundred and not more than one thousand dollars for each violation, together with costs and reasonable attorneys' fees and disbursement incurred by the person bringing the action.

Mass. Gen. Laws ch. 6, § 177.[8]

As described above, plaintiff alleges that defendants Grasmuck and Basener willfully violated the provisions of the CORI statute by obtaining and disseminating his criminal record without a lawful purpose.  Plaintiff has alleged at least three plausible violations of the statute: the initial inquiry into his records by Grasmuck, the dissemination of his record from Grasmuck to Basener, and the dissemination of that information to Emmanouil or an intermediary.  If plaintiff succeeds in proving his claim, he may be entitled to exemplary damages as to those violations, whether or not he can prove actual damages.

Plaintiff may not, however, seek damages based on alleged injuries to Gibraltar Granite & Marble Corporation.  A shareholder may not normally assert a claim in his own name for injuries sustained by a corporation.  *See, e.g.*, *In re Dein Host, Inc.*, 835 F.2d 402, 405 (1st Cir. 1987).  To the extent that plaintiff alleges financial harms based on losses suffered by Gibraltar Granite, those harms are not the type of "direct, personal, and non-derivative" harms that this district has found to create an exception to that rule.  *Quarterman v. City of Springfield*, 716 F. Supp. 2d 67 (D. Mass. 2009).

Even if plaintiff could prove that he is entitled to recover for the harms suffered by his corporation, he would be estopped or otherwise barred from doing so.  In January 2008,

---

[8] Even if the MTCA has superseded the CORI statute with respect to the City of Gardner's ability to be sued, the act establishes an exception to the application of Mass. Gen. Laws ch. 258 for intentional torts.  *See, e.g., Shenker v. Binns*, 18 Mass. App. Ct. 404 (1984).  In other words, the immunity granted to public officers by chapter 258 is inapplicable to claims that contend that a public officer committed an intentional tort against the plaintiff. *Alves v. Hayes*, 381 Mass. 57, 59 (1980).  Thus, the CORI statute's remedy provision concerning the intentional torts of public employees has been left intact.

Gibraltar Granite filed for Chapter 11 bankruptcy.  As part of those proceedings, the corporation had a duty to disclose all assets, including potential legal claims, to the bankruptcy court.  *Guay v. Burack*, 677 F.3d 10, 16 (1st Cir. 2004).  At that time, plaintiff—who himself signed the forms on behalf of Gibraltar—did not disclose any potential claim for damages to the corporation based on the alleged unlawful records access and dissemination.  Having not disclosed this potential suit as an asset of the corporation in those proceedings, plaintiff may not now recover on such claims.

Accordingly, plaintiff will only be allowed to assert claims of damage to himself personally, and not to the corporation.

### D.     Statute of Limitations

Defendants contend that, as applied here, Mass. Gen. Laws ch. 6, § 177 is a penal statute, and that plaintiff's claim is thus barred by the one-year limitations period set forth in Mass. Gen. Laws ch. 260 §5.

Defendant does not cite, and the Court has not found, any cases that have interpreted Mass. Gen. Laws ch. 6, § 177 as a penal statute.  Nonetheless, the Court need not decide the question.  Even assuming a one-year limitations period, plaintiff timely filed his complaint.

A limitations period begins to run "when a reasonable person who has been subjected to the conduct which forms the basis for the complaint would have been able to discern the cause of the harm."  *Doe v. Creighton*, 439 Mass. 281, 283-84 (2003).  Here, plaintiff was not aware of defendants' access to his records until October 15, 2009.  Nor have defendants set forth any suggestion that plaintiff could reasonably have made himself aware of their involvement at an earlier time.  Thus, it appears from the record that the limitations period began to run on October

15, 2009.  Plaintiff filed his complaint on April 23, 2010, well within the one-year time limit.

Accordingly, defendant's motion for summary judgment on the grounds that the claims are time-barred will be denied.

**VI.**     <u>**Conclusion**</u>

For the foregoing reasons, defendant Grasmuck's motion to strike is GRANTED in part and DENIED in part, defendant City of Gardner's motion for summary judgment is GRANTED, and defendants Grasmuck and Basener's motions for summary judgment are GRANTED as to damages relating to Gibraltar Granite & Marble Corporation, and otherwise DENIED.

**So Ordered.**


                                                     /s/ F. Dennis Saylor
                                                     F. Dennis Saylor IV
Dated:  May 9, 2013                                  United States District Judge