## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

—————————————————————————————————

VINCENT VICTOR ROGGIO,        )

        Plaintiff,            )

          v.             )      Civil Action No.
                                 )      10-40076-FDS

WILLIAM J. GRASMUCK and     )
EDWARD BACENER,          )

        Defendants.       )

—————————————————————————————————

## MEMORANDUM AND ORDER ON PLAINTIFF'S
## MOTION FOR ATTORNEYS' FEES AND MOTION FOR A BILL OF COSTS

SAYLOR, J.

This is a civil action involving violations of the Massachusetts Criminal Offender Record Information ("CORI") statute, Mass. Gen. Laws ch. 6 § 172. The case was tried to the Court without a jury. On November 11, 2013, the Court found in favor of plaintiff and awarded exemplary damages in the amount of $400 and reasonable costs and attorneys' fees. Plaintiff has moved for an award of $113,926 in attorneys' fees and $3,181.27 in costs.

For the following reasons, plaintiff's motions will be granted in part and denied in part.

I.    **Background**

    A.    **Factual Background**

At trial, the Court found the following relevant facts. *See generally Roggio v. Grasmuck*, 2013 WL 6119324 (D. Mass. Nov. 19, 2013).

Plaintiff Vincent Roggio is a resident of Rumson, New Jersey. In 1987, he was convicted on several counts of mail fraud and making false statements in the United States District Court for the Southern District of Florida. He served seven years in federal prison for those crimes. After his release from prison in 1994, he established several businesses in New Jersey.

Defendant William Grasmuck, a resident of Massachusetts, was a detective in the Gardner, Massachusetts Police Department. Defendant Edward Bacener, a resident of

Massachusetts, was employed as a court officer in the Gardner District Court. He was also employed by the Hannaford's supermarket in Gardner as a security officer.

On the morning of January 11, 2006, Grasmuck improperly obtained access to Roggio's criminal record at Bacener's request. Bacener received that information from Grasmuck and disseminated it to an unknown person or persons. In March 2006, Roggio's criminal record appeared in the public filings of a lawsuit filed against him in the United States District Court for the District of New Jersey. It also appeared on a website, Gibraltar-Granite.com.

### B.      Procedural Background

In 2008, Roggio filed suit against the FBI in New Jersey, alleging improper disclosure of his criminal record. He learned through discovery in the New Jersey case that his criminal record on the FBI system had been accessed in 2006 by someone from the Gardner Police Department.

Roggio filed this action on April 23, 2010. At the time he filed the action, he knew the identity of the defendants and the basic nature of the violation; he essentially took no discovery in this action.

Originally, Roggio's wife was also a plaintiff in the case. Her claims were later dismissed because she had filed for bankruptcy and had not preserved her claims by making the bankruptcy trustee aware of them as required by 11 U.S.C. § 521(a)(1).

The complaint originally included four claims: (1) violation of the Federal Civil Rights Act, 42 U.S.C. § 1983; (2) violation of Massachusetts privacy law, Mass. Gen. Laws ch. 214 § 1B; (3) violation of the Massachusetts CORI Act, Mass. Gen. Laws ch. 6 § 172; and (4) violation of the Federal Privacy Act, 5 U.S.C. § 552a(b). All but the CORI Act violation were dismissed before trial.

The complaint also originally included four defendants: the City of Gardner, William Grasmuck, Edward Bacener, and Hannaford Brothers Company. The claims against the City of Gardner and Hannaford were dismissed before trial.

2

Roggio originally claimed derivative damages based on harm to his company, Gibraltar Granite. Those claims were disallowed by the Court prior to trial.

Shortly before trial, Roggio engaged new counsel. His original lawyers, John Markham and Bridget Zerner, were replaced by Benjamin Wish, who tried the case.

At trial, Roggio claimed compensatory damages for litigation expenses in his previous case against the FBI and emotional distress as the result of a prosecutorial investigation allegedly spurred by the release of his criminal record information. He failed, however, to introduce competent evidence to prove those compensatory damages. He did prove one willful violation of the CORI Act by each remaining defendant, and was awarded $400 in exemplary damages, as well as attorneys' fees and costs.

## II.    Attorneys' Fees

The CORI Act authorizes civil suits for improper dissemination of an individual's criminal record information. Mass. Gen. Laws ch. 6 § 177. If a defendant commits a willful violation of the act, a plaintiff may recover costs and reasonable attorneys' fees. *Id.*

Courts in the First Circuit consider both federal and Massachusetts precedent when evaluating the reasonableness of an award of attorneys' fees. *Joyce v. Town of Dennis*, 720 F.3d 12, 26 (1st Cir. 2013). No Massachusetts courts have discussed how reasonable attorneys' fees should be calculated under the CORI Act.

In the First Circuit, courts generally calculate an amount of attorneys' fees using the "lodestar" method. *Id.* at 26 (citing *Fontaine v. Ebtec Corp.*, 415 Mass. 309, 325 (1993)). This method "involves multiplying the number of hours productively spent by a reasonable hourly rate to calculate a base figure." *Torres-Rivera v. O'Neill-Cancel*, 524 F.3d 331, 336 (1st Cir. 2008). "The party seeking the award has the burden of producing materials that support the request." *Hutchinson ex rel. Julien v. Patrick*, 636 F.3d 1, 13 (1st Cir. 2011). Time records that are "too generic and, thus, insufficient as a practical matter to permit a court to answer questions about excessiveness, redundancy, and the like" may also be discounted or disallowed.

3

*Torres-Rivera*, 524 F.3d at 336.

The court determines the rates to be applied in the lodestar calculation. *Id.* at 336-37.

"Reasonable fees . . . are to be calculated according to the prevailing market rates in the relevant

community, that is, those prevailing in the community for similar services by lawyers of

reasonably comparable skill, experience, and reputation." *Grendel's Den, Inc. v. Larkin*, 749

F.2d 945, 955 (1st Cir. 1984) (internal quotations omitted).

The court "may adjust the lodestar itself, upwards or downwards, based on any of several

different factors." *Id.* These factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3)
> the skill requisite to perform the legal service properly; (4) the preclusion of
> employment by the attorney due to acceptance of the case; (5) the customary fee;
> (6) whether the fee is fixed or contingent; (7) time limitations imposed by the
> client or the circumstances; (8) the amount involved and the results obtained; (9)
> the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of
> the case; (11) the nature and length of the professional relationship with the
> client; and (12) awards in similar cases.

*Diaz v. Jiten Hotel Mgmt.*, 741 F.3d 170, 177 n.7 (1st Cir. 2013) (quoting *Hensley v. Eckerhart*,

461 U.S. 424, 430 n.3 (1983)).[1]

Plaintiff has submitted time records of legal fees from two sources. First, he offers time

records of attorneys John Markham and Bridget Zerner, who worked on the case from its

inception until July 26, 2013. The time records of attorneys Markham and Zerner, which are

acknowledged to be incomplete, show that attorney Markham spent 82.6 hours and attorney

Zerner spent 248.65 hours on the case. (Markham Decl., Ex. A).[2] These records were not kept

contemporaneously.[3] Plaintiff contends that based on the normal hourly rates of attorneys

---

[1] If a plaintiff has prevailed against one or more defendants, the court must determine whether the fee award should run jointly and severally against the defendants, or, if not, what portion of the award each defendant should bear. *Torres-Rivera*, 524 F.3d at 337.

[2] As plaintiff has the burden of providing evidence for his requested attorneys' fees, time not included in the records will be excluded from the lodestar calculation. *See Hutchinson*, 636 F.3d at 13.

[3] The Court could disallow the hours in their entirety because the records were not kept contemporaneously, it will not do so, however, because attorneys Markham and Zerner worked under a contingency fee agreement. *See Grendel's Den*, 749 F.2d at 952 (holding that "the absence of detailed contemporaneous time records, except in extraordinary circumstances, will call for a substantial reduction in any award or, in egregious cases,

4

Markham and Zerner, they performed work totaling $95,202.  Plaintiff is requesting $35,000 in attorneys' fees for their work because they charged him a flat fee of $35,000 and a 15 percent contingency fee.

Second, he offers time records of attorney Benjamin Wish and his paralegal, Amy Marquez, who worked on the case from late July 2013 to the present.  (*See* Wish Aff., Ex. A).  Attorney Wish entered his notice of appearance in this case on July 23, 2013, and ultimately tried the case.  In his affidavit, attorney Wish states he has made efforts to eliminate duplicate or unnecessary time entries to assure the reasonableness of the fee request.  (Wish Aff. ¶ 6).  The time records show attorney Wish spent 241.30 hours and Marquez spent 47.10 hours on this case.  (*Id.*, Ex. A).  Plaintiff is requesting $78,926 in attorneys' fees for Wish and Marquez, based on an hourly wage of $290 and $190, respectively.

The total amount in attorneys' fees sought is thus $113,926.[4]

## A.   Exclusion of Time Unreasonably Incurred

The Court will first take up the issue of excluding time that was unreasonably incurred, because it concerned (1) claims that ultimately failed, (2) unnecessary time spent on discovery, or (3) the transition from one set of counsel to another on the eve of trial.[5]

### 1.   Failed Claims

A plaintiff should not recover attorneys' fees for work on claims as to which he or she did not prevail.  *See Torres-Rivera*, 524 F.3d at 336 ("the court may disallow time spent in litigating failed claims.").  "When a plaintiff prevails on some, but not all, of multiple claims, a fee reduction may be in order. . . .  In such a situation, the court must filter out the time spent on

disallowance.").

[4] Plaintiff's motion requests $115,869 in attorneys' fees.  This appears to be based on a calculation where attorney Wish worked 248 hours on the case.  (Pl. Mem. at 4).  Plaintiff's submissions, however, show that attorney Wish spent 241.30 hours on the case.  (Wish Aff., Ex. A).

[5] The Court could address this issue after the lodestar calculation, under the rubric of making an adjustment for "results obtained."  *See Joyce*, 720 F.3d at 27.  Under the unusual circumstances presented here, the Court will address the reasonableness issue first.

unsuccessful claims and award the prevailing party fees related solely to time spent litigating the winning claim(s)." *Gay Officers Actions League v. Puerto Rico*, 247 F.3d 288, 298 (1st Cir. 2001).[6]

There are at least five types of claims in this matter that failed, and as to which no attorneys' fees should be awarded. First, plaintiff brought a variety of claims of privacy violations under both federal and state law; all but the CORI Act claim were dismissed. Second, he brought claims against two other defendants who were later dismissed from the case. Third, his wife was originally a plaintiff in the case, but her claims were dismissed. Fourth, he attempted to assert a claim for derivative damages based on harm to Gibraltar Granite, which the Court disallowed. Fifth, he failed to introduce any competent evidence of compensatory damages at the trial.

At the outset, the Court is faced with a significant problem: the time records of the attorneys do not generally segregate the time spent on plaintiff's successful CORI claim from the time spent on his other claims. Because plaintiff bears the burden of proving that the time entries are reasonable, insufficiently specific time entries that include a mix of work between dismissed and non-dismissed claims may be excluded. *See Torres-Rivera*, 524 F.3d at 336 (time records not specific enough can be excluded). In other words, if a time entry includes both recoverable costs and non-recoverable costs, and there is no clear way to segregate them, the court may simply exclude the entire time entry.

Using that method here, the time records appear to show that attorney Markham spent 43.4 hours and attorney Zerner spent 136.2 hours on claims that were ultimately dismissed, on claims against defendants who were ultimately dismissed, on claims for compensatory damages that were never proved, or on claims by plaintiff's wife that were ultimately dismissed. Because those claims were unsuccessful, the Court will exclude those hours from the lodestar calculation.

---

[6] Plaintiff can, however, recover attorneys' fees for failed claims that are interconnected with their winning claims. *See Gay Officers Action League*, 247 F.3d at 298 n.7; *Lipsett v. Blanco*, 975 F.2d 934, 940 (1st Cir. 1992). Here, plaintiff does not contend his failed claims were interconnected with his CORI Act claim.

6

Likewise, some proportion of the work by attorney Wish involved claims for compensatory

damages that ultimately were not proved, and that time cannot be segregated from the

recoverable time.  Again treating mixed time entries as unrecoverable time, attorney Wish spent

26.4 hours on plaintiff's claims for compensatory damages, which will be excluded.

### 2.      Unnecessary Time Spent on Discovery

Defendants further contend that unnecessary fees were expended on discovery, and that

indeed plaintiff took no discovery.  They contend that plaintiff was already in possession of all

the facts necessary for the prosecution of the case and that unnecessary attorneys' fees were

apparently expended simply collecting and organizing information that had already been

produced or created in the New Jersey litigation.   According to their records, attorney Markham

spent 17.8 hours and attorney Zerner spent 41.1 hours to find, collect, and produce these

materials.

The time spent on this discovery was at least somewhat excessive.  In addition, the

records are unclear as to what discovery work was done for which defendants.  Therefore, the

hours will be excluded.  *See Haddad v. Wal-Mart Stores, Inc.*, 455 Mass. 1024, 1027 (2010)

(reducing fees due to unreasonableness); *Grendel's Den*, 749 F.2d at 951-52 (faulting counsel

for not keeping contemporaneous time records).  In addition, time spent on defendants' motion

to compel discovery focused primarily on documents concerning damages suffered by plaintiff.

According to their records, attorney Markham spent 0.8 hours and attorney Zerner spent 6.5

hours on that motion practice.  These hours will be excluded because plaintiff was unable to

prove his claim for compensatory damages at trial.  *See Gay Officers Action League*, 247 F.3d at

298.

### 3.      Duplication of Effort

Courts may also reduce attorneys' fees based on duplication of effort or unreasonable

expenditure of time.  *See Haddad*, 455 Mass. at 1027.  Any duplication of effort by plaintiff's

attorneys after he switched legal teams should not be awarded as attorneys' fees.  *See Baird v.*

*Bellotti*, 724 F.3d 1032, 1036 (1st Cir. 1984) (plaintiff "had switched counsel in midstream, requiring inquiry into whether work done by new counsel needlessly duplicated that of old counsel.").

According to the records, attorney Markham spent 2.0 hours and attorney Zerner spent 7.9 hours turning over the case to plaintiff's new legal team. Those hours will be excluded. In addition, it appears as if the work on the motions *in limine* performed by attorneys Markham and Zerner is at least somewhat duplicative of the work performed by plaintiff's new counsel. The Court cannot determine the extent of the overlap, because plaintiff did not explain what motions *in limine* they were working on with specificity. Accordingly, attorney Markham's 2.0 hours and attorney Zerner's 12.5 hours spent on motions *in limine* will also be excluded.

Attorney Wish has several entries of time where he reviewed the pleadings or conferred with attorney Markham about the case, tasks he would not have had to do if he were not newly introduced to the case. According to records submitted by plaintiff, attorney Wish spent 40.4 hours and Marquez spent 20.3 hours on duplicative tasks because of case turnover. Those hours will be excluded.

### 4. <u>Other Issues</u>

Defendants raise two other issues that they contend resulted in an unnecessary or unreasonable expenditure of time.

First, they contend that the time attorney Wish spent conferring with partners at Todd & Weld should be excluded. In his affidavit, attorney Wish stated that he removed the time entries of attorneys Howard Cooper and J. Owen Todd to help ensure the reasonableness of the request. (Wish Aff. ¶ 8). That lends credence to defendants' contention that his time spent conferring with those two attorneys was not sufficiently reasonable to include a request for attorneys' fees. Although it was no doubt useful to confer with senior lawyers, it is not a cost that properly should be included in the fee award. Attorney Wish was capable trial counsel, and the Court has no doubt that he would have performed equally capably whether or not he had conferred with

senior lawyers.  Accordingly, the block-billed entries of 35.7 hours that include the time attorney Wish spent conferring with attorney Todd will be excluded as unnecessary.  In addition, attorney Wish removed almost all of the time entries related to trying this case in front of a jury, as the case was a bench trial.  (Wish Aff. ¶ 6).  According to the time records, attorney Wish spent part of a block-billed 7.8 hours on proposed *voir dire* questions, among other tasks.  That time would have been appropriately spent only in a jury trial.  That time will also be excluded, as there is no reasonable way to tell the division of time among the listed tasks.

Second, defendants also contend that the hours Marquez spent on September 11, 2013, preparing for trial were unnecessary because it appears to have mostly related to the preparation of a video recording of defendant Grasmuck's deposition in the FBI matter for use as a trial exhibit.  The Court agrees, and will exclude those 6.5 hours.

### B. Lodestar Calculation

#### 1. Hours Worked

##### a. Attorneys Markham and Zerner

According to the time records, attorney Markham spent 82.6 hours on this case. (Markham Decl., Ex. A).  After subtracting the 66 hours excluded above, the total becomes 16.6 hours.  The time records also show that attorney Zerner spent 248.6 hours on the case.  (*Id.*). After subtracting the 204.2 hours excluded above, the total becomes 44.4 hours.

##### b. Attorney Wish and Paralegal Marquez

According to the time records, attorney Wish spent 241.3 hours on this case.  After subtracting the 110.3 hours excluded above, the total becomes 131 hours.  (Wish Aff., Ex. A). The time records also show that Marquez spent 47.1 hours on the case.  (*Id.*).  After subtracting the 26.8 hours excluded above, the total becomes 20.3 hours.

#### 2. Hourly Rates

##### a. Attorneys Markham and Zerner

Plaintiff states that the normal hourly fees for attorneys Markham and Zerner are $400

and $250, respectively.  Defendants do not challenge the reasonableness of those rates.  Attorney

Markham's affidavit states that he is a partner at Markham & Read and has more than 35 years

of trial and appellate experience.  (Markham Decl. ¶ 2).  The affidavit also states that attorney

Zerner is an associate at Markham & Read and graduated from law school in 2007.  (*Id.* ¶ 4).[7]

### b.        Attorney Wish and Paralegal Marquez

Defendants do not challenge the reasonableness of the rates for attorney Wish or

Marquez.  Plaintiff states that the normal hourly fees for attorney Wish and Marquez are $290

and $190, respectively.  Attorney Wish's affidavit states that he is an associate at the law firm of

Todd & Weld LLP, who graduated from law school in 2008.  (Wish Aff. ¶¶ 2-3).  It also states

that Marquez is a skilled paralegal with more than five years of experience.  (Wish Aff. ¶ 4).

### 3.        Lodestar Calculation

Using the above figures, the lodestar calculation of hours worked times hourly rates

results in the following figures:

| | | |
|---|---|---|
| Markham | 16.6 hours x $400 = | $  6,640 |
| Zerner | 44.4 hours x $250 = | $11,100 |
| Wish | 131 hours x $290 = | $37,990 |
| Marquez | 20.3 hours x $190 = | $  3,857 |
| | Total | $59,587 |

### C.        Other Reductions

There remains the question whether any additional reduction to the figure of $59,587 is

warranted based on the various factors identified by the First Circuit in *Diaz*.  *See* 741 F.3d at

177 n.7.

One factor to be considered is whether there were questions that presented issues of

"novelty and difficulty."  *Id.*  CORI Act cases are not commonly litigated, and few (if any) have

---

[7] As noted, attorneys Markham and Zerner had an agreement with plaintiff where he owed them a flat fee of $35,000 and a contingency of 15 percent on any recovery.  (*Id.* ¶ 5).

gone to trial.  Some latitude is therefore appropriate with regard to questions such as the amount of legal research and writing necessary to address the issues.[8]

Another factor is the "results obtained," which the Supreme Court has identified as " a preeminent consideration in the fee adjustment process."  *Coutin v. Young & Rubicam P.R., Inc.*, 124 F.3d 331, 338 (1st Cir. 1997) (citing *Hensley*, 461 U.S. at 432).  The phrase "results obtained" includes plaintiff's "success claim by claim," the "relief actually achieved," and "the societal importance of the right [that] has been vindicated," taken in combination.  *Joyce*, 720 F.3d at 27 (quoting *Coutin*, 124 F.3d at 338).  When "a plaintiff's victory, although *de minimis* as to the extent of relief, represents a significant legal conclusion serving an important public purpose, the fee award need not be proportionate to the damages recovered."  *Id.* (quoting *Killeen v. Westban Hotel Venture L.P.*, 69 Mass. App. Ct. 784 (2007)) (internal quotations and corrections omitted).

It is difficult to know how to apply that standard in this case.  Plaintiff was only awarded $400 total in exemplary damages, and most of his claims failed for one reason or another.  Moreover, although the privacy rights the CORI Act protects are important, there is no obvious hierarchy of legal rights, from the most important to the least, against which the Court can measure the right vindicated here.

To the extent that the Massachusetts legislature has provided any indication as to how the court should approach this issue, the available evidence suggests that some consideration of proportionality is in order.  Fee-shifting statutes are intended to permit plaintiffs to vindicate their statutory rights under circumstances where competent counsel might otherwise be unwilling to accept the representation.  *See Diaz*, 741 F.3d at 178-79.  Some Massachusetts fee-

---

[8] Additional factors to be considered in awarding attorneys' fees include time limitations imposed by the client or the circumstances, the undesirability of the case, and awards in similar cases.  *Diaz*, 741 F.3d at 177 n.7.  These factors do not appear to be significant here.  First, there were no time limitations imposed by the client or the circumstances.  Second, the case does not appear to be undesirable, and plaintiff has not contended it was undesirable.  Finally, there appear to be no reported decisions awarding attorneys' fees under the CORI Act for the Court to use as comparison.  While the Court should also consider the preclusion of employment for the attorneys due to their work on this case, *id.*, that factor does not seem to be relevant here.

shifting statutes provide that reasonable attorneys' fees should be awarded "irrespective of the amount in controversy." *See, e.g.*, Mass. Gen. Laws ch. 93A, §§ 9(4), 11; ch. 151B, § 9. The CORI statute, however, contains no such provision. *See* Mass. Gen. Laws ch. 6, § 177. Accordingly, it would appear that the "amount in controversy" should, at least in some respect, factor into the reasonableness of the fee award.

Another complicating factor is the fact that this case was unnecessarily complex in virtually every respect. Overall, this litigation should have been straightforward. As noted, no discovery was taken, because the facts were known to plaintiff at the case's inception. But plaintiff unnecessarily added multiple claims to this matter that had no basis in law or fact—including, among other things, claims for compensatory damages as to which he produced little or no competent evidence. The Court has reduced the time charged considerably because of those failed claims, and perhaps no more needs to be done. But it is nonetheless troubling that so much time and effort was spent on so many unnecessary issues, which infected the proceeding from the beginning.

Finally, it seems entirely appropriate to take into account the fee arrangement made by plaintiff's counsel at the beginning of the case. The plaintiff and his original counsel agreed to a flat fee of $35,000, plus a 15 per cent contingency fee component. That amount was negotiated at arm's length, and surely bears on the issue of a reasonable fee. But even that fee was no doubt influenced by the how the case appeared at the time to counsel; among other things, the case appeared to have two plaintiffs, rather than one, and that plaintiff might well recover substantial compensatory damages. It is impossible to know whether that fee would have been higher or lower if counsel could have known at the time how the case would actually develop.

In any event, it appears that the most sensible result, under all the circumstances and considering all of the relevant factors, is to give plaintiff and his counsel the benefit of their bargain. The negotiated amount appears to be reasonable and somewhat proportionate, and likely reflects the true market price of the legal fees. The Court will therefore award reasonable

attorneys' fees in the amount of $35,000 plus 15 percent of $400, for a total of $35,060.

### D.      Apportionment of the Fees

In cases where the plaintiff has prevailed over more than one defendant, the court must determine whether the fee award should run jointly and severally against defendants or be apportioned between them.  *Torres-Rivera*, 524 F.3d at 337.  There is no uniform prescription as to how to apportion attorneys' fees; possible schemes include equal division, division by relative liability, and division by assignment of time reasonably expended in litigating against each defendant.  *Id.*  "The guiding principle is equity; the district court should strive to determine 'the most fair and sensible solution' for apportioning the fee award."  *Id.* (quoting *Grendel's Den*, 749 F.2d at 959).

This case does not appear to be one where apportionment of attorneys' fees is appropriate.  Each defendant was found liable for one violation of the CORI Act.  Although each violation was distinct, the evidence showed that defendants likely acted in concert.  *Roggio*, 2013 WL 6119324, at *7-8.  Both defendants litigated the entire case.   It is true that counsel for defendant Grasmuck engaged in most of the visible legal work, but defendant Bacener joined him in all the relevant motions.  Apportionment of attorneys' fees by relative time litigating against each defendant is generally more appropriate where there were "markedly unequal efforts by each defendant."  *Torres-Rivera*, 524 F.3d at 337-38 (collecting cases).  That was not the case here.

The Court will therefore award the total attorneys' fees in this case of $35,060 against both defendants jointly and severally.  *See Astro-Med Inc. v. Plant*, 2008 WL 2883769, at *3-6 (D.R.I. Jul. 25, 2008) (attorneys' fees granted jointly and severally against defendants who together misappropriated plaintiff's trade secrets); *Northeastern Lumber Mfrs. Ass'n v. Northern States Pallet Co., Inc.*, 2011 WL 4382119, at *1 (D.N.H. Sep. 15, 2011) (attorneys' fees granted jointly and severally against defendants where one defendant acted as the agent of the other and

they defended the case together).[9]

## IV.   Costs

The CORI Act also allows a plaintiff to recover reasonable costs when a defendant has committed a willful violation.  Mass. Gen. Laws ch. 6 § 177.  Defendants do not appear to contest plaintiff's claimed costs. Those costs involve fees for (1) a transcript for the pretrial conference in this case, (2) transcripts for two days of deposition of plaintiff, (3) photocopies of trial exhibits and deposition testimony, (4) service of subpoenas on the FBI, and (5) transcripts of the bench trial in this case.

The expenditures that a federal court may tax as costs against the losing party are set forth in 28 U.S.C. § 1920.  These include fees for printed or electronically recorded transcripts necessarily obtained for use in the case, fees and disbursement for printing and witnesses, and fees for the costs of making copies of any materials where the copies are necessarily obtained for use in the case.  28 U.S.C. §§ 1920(2)-(4).  Costs must be adequately documented to be taxable. *Rogers v. Cofield*, 935 F. Supp. 2d 351, 386 (D. Mass. 2013).

### A.   Transcript Costs

Transcript costs are covered by 28 U.S.C. § 1920(2).  Under Section 1920(2), a court must tax the costs of transcripts if they were either introduced in evidence or used at trial; a court may tax the costs of transcripts not used at trial if special circumstances warrant it.  *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 249 (1st Cir. 1985).

The pretrial conference transcript was not used at trial, and plaintiff has made no showing as to why the cost for that transcript should be taxed.  The transcripts of plaintiff's deposition were also not used at trial or introduced into evidence, and plaintiff likewise has made no showing of special circumstances as to why those costs should be taxed.  Accordingly, those costs of $72.75 and $1,386.00, respectively, will be disallowed.

Plaintiff does contend that the trial transcripts he ordered were necessary for the

---

[9] Plaintiff has not asked the Court to apportion the fee award among the two claiming law firms.

preparation of his proposed findings of fact and conclusions of law.  The Court agrees.

Accordingly, the costs of $1,267.32 for those transcripts will be allowed.  *See Data Gen. Corp.*

*v. Gumman Sys. Support Corp.*, 825 F. Supp. 361, 367 (D. Mass. 1993) (allowing trial transcript

costs).

**B.**       **Costs for Photocopies**

Costs of copies are taxable under 28 U.S.C. § 1920(4) as long as they are reasonably

necessary for use in the case.  *Osorio v. One World Technologies, Inc.*, 834 F. Supp. 2d 20, 23

(2011).  "While a page-by-page justification is not required, the prevailing party must offer some

evidence of necessity."  *Bowling v. Hasbro, Inc.*, 582 F. Supp. 2d 192, 210 (D.R.I. 2008).

Counsel should "inform the Court of the number of copies, the cost of each copy, and provide, if

possible, a breakdown of the reasons why photocopying of certain documents was necessary."

*Osorio*, 834 F. Supp. 2d at 23 (internal quotation omitted).

Although plaintiff has not given the Court a breakdown of the reasons why photocopying

of each document was necessary, he has provided the number of copies and the cost of each

copy.  There were voluminous materials involved in the trial of this case, including dozens of

exhibits and several deposition transcripts from witnesses in a prior case.  The cost of 15 cents

per page is reasonable.  Accordingly, the photocopying costs of $250.20 will be allowed.

**C.**       **Costs for Subpoenas to the FBI**

Costs for subpoenas of witnesses are taxable under 28 U.S.C. § 1920(3).  *Bandera v. City*

*of Quincy*, 220 F. Supp. 2d 26, 47 (D. Mass. 2002).  While no representative of the FBI testified

in this case, plaintiff's counsel issued subpoenas to them for testimony that was necessary at the

time but later rendered duplicative by an evidentiary ruling of the Court.  Accordingly, those

costs of $205 will be allowed.

**D.**       **Apportionment of Costs**

In plaintiff's motion for costs, it states "the Rust respectfully requests that the Clerk tax

Defendant Daniel Candle for costs . . . ."  (Pl.'s Mot. for Approval of Verified Bill of Costs at

*2).  The Court assumes this was a typographical error.  Because the awarded costs involved issues pertaining to both defendants equally, they will be jointly and severally liable for the $1,722.52 of costs awarded to plaintiff in this case.

**V.**      **Conclusion**

      For the foregoing reasons, plaintiffs' motion for attorneys' fees is GRANTED in the amount of $35,060 and otherwise DENIED.  Plaintiff's motion for a bill of costs is GRANTED in the amount of $1,722.52 and otherwise DENIED.

**So Ordered.**

                                 /s/ F. Dennis Saylor_____
                                 F. Dennis Saylor IV
                                 United States District Judge

Dated:  March 12, 2014